**BARTEE et al. v. W. T. CARTER & BRO. et al.**

No. 2964.

Court of Civil Appeals of Texas. Beaumont.

Dec. 10, 1936.

Rehearing Denied Dec. 23, 1936.

On Second Rehearing Jan. 13, 1937.

R. H. Jones, of Livingston, G. C. Lowe, of Woodville, and Geo. E. Holland, of Henderson, for appellants.

Baker, Botts, Andrews & Wharton, of Houston, and V. A. Collins, of Livingston, for appellees.

WALKER, Chief Justice.

This was an action in trespass to try title by appellants, the heirs of Ferdinand Bartee and his wife, Elizabeth Bartee, deceased, against appellees, W. T. Carter & Bros., to recover 640 acres of land, and, in the alternative, 160 acres out of a specific tract of 1411 acres, a part of the Toliver survey in Polk county. Appellants pleaded generally trespass to try title, and specially the 10-year statute of limitation (Vernon's Ann.Civ.St. art. 5510); they claimed a specific tract of 640 acres

on allegations of equitable partition, and, in the alternative, an undivided interest of 640 acres, and further in the alternative, an undivided interest of 160 acres, There were no allegations defining and claiming the specific tract actually held, claimed, and used by Ferdinand and Elizabeth Bartee during the period of occupancy. Appellees answered by demurrers, plea of not guilty, and by special plea of the statute of 5-year limitation (Vernon's Ann.Civ.St. art. 5509). The trial was to a jury, and judgment was entered in favor of appellees on an instructed verdict.

The evidence received on the trial raised the following fact issues:

(a) Ferdinand and Elizabeth Bartee entered upon the Toliver survey and established their improvements thereon in 1859. They held these improvements jointly, claiming the land actually occupied by them until the death of Ferdinand Bartee in 1870. After his death, his wife, with the children born to her and her deceased husband, continued in possession of the improvements, claiming the same until she married a second time in 1879. Immediately after her second marriage she moved off the Toliver survey and remained off of it for 6 months, but during that time it was occupied and held for her by a tenant. At the end of the 6-month period she moved back on the land and remained there until some time in 1882—possibly in 1885—claiming her improvements as she had done continuously since she made her original entry in 1859. Elizabeth Bartee died in 1909. From the time she moved off in 1882—possibly in 1885—until her death, neither she nor any of the appellants claimed the land in any way, nor were they in possession of any part of the Toliver survey. After her death none of the appellants asserted any sort of claim to the land in controversy, or to any part of the Toliver survey until 1933, when one of the sons entered upon the land, claiming 640 acres under the possession and claim of Ferdinand and Elizabeth Bartee. The possession of Ferdinand and Elizabeth Bartee was the first possession of the Toliver survey shown by the evidence.

(b) No testimony was offered that Ferdinand and Elizabeth Bartee claimed any land not within their inclosures: Certain testimony was offered by appellants and excluded by the court, but this excluded testimony was on the issues of fact stated above; no part of the excluded testimony was to the effect that Ferdinand and Elizabeth Bartee, while in possession of a part of the Toliver survey, claimed 640 acres or 160 acres, either by claim of a specific tract of land, or by claim of an undivided interest.

(c) Appellees claim by a regular chain of title from and under the original grantee. Thus, on the 12th day of June, 1867, Toliver sold and conveyed the original survey to Charlie Kesler on the recited consideration of "$500.00 to me paid"; this deed, duly recorded in the deed records of Polk county, contained the following habendum clause and warranty: "To have and to hold the same unto the said Kesler his heirs and assigns forever, together with all and singular the rights, members, hereditaments and appurtenances to the same belonging or in any manner incident or appertaining. It being well understood that this conveyance is in the nature of a quit claim deed the said Toliver only warranting the title against all those who claim by virtue of any conveyance under him."

Appellees offered in evidence deeds in their chain of title, duly recorded in Polk county, executed in 1875, 1876, 1877, 1893, 1894, 1895, 1901, 1909, and 1926. They had a tenant on the land during the years 1876-1886. From 1905 to 1913 John D. Oliver was in possession of a substantial portion of the Toliver survey under a lease contract with appellees' predecessor in title, William Carlisle & Co., covering all the land in controversy. Appellees and those under whom they hold paid the taxes on the land in controversy, and regularly assessed and paid the taxes from 1905 to 1913. Appellees and those under whom they hold have asserted a continuous claim of ownership from the date of the original grant.

■ Appellees have many objections to appellants' brief to the effect that certain exceptions were not reserved in the lower court; that certain issues were not requested by them in the lower court; that the assignments and propositions are too general, etc. All of these exceptions are overruled. The appeal is from a judgment entered upon an instructed verdict. An instructed verdict affords a basis for fundamental error; and if, on the statement made by the parties in their briefs, fundamental error was committed by the lower court in instructing the verdict, it is the duty of the appellate court to re-

view the error. Harlington Land & Water Co. v. Houston Motor Car Co. (Tex.Com.App.) 209 S.W. 145; Wilson v. Armstrong (Tex.Civ.App.) 236 S.W. 755; Independent Farmers' Gin Co. v. Hander (Tex.Civ.App.) 269 S.W. 1062; Southwestern Settlement & Development Co. v. Village Mills Co. (Tex.Civ.App.) 230 S.W. 869.

■■ Appellants' first contention reviewable as fundamental error is that they were entitled to an instructed verdict on their prior possession, Harlington Land & Water Co. v. Houston Motor Car Co., supra, and, in the alternative, that the court should have submitted the case to the jury on the issue of a lost deed or muniment of title from the original grantee to Ferdinand and Elizabeth Bartee. These contentions are overruled. While it is the law, as against a trespasser, that the possession need not be "continuous up to and concurrent with the alleged unlawful entry," Beason v. Williams (Tex.Civ. App.) 229 S.W. 963, 964; 41 Tex.Jur. 544, yet, quoting from the cited paragraph of Texas Jurisprudence, "A possession which has been voluntarily discontinued by the possessor does not give rise to any presumption of title or afford ground for recovery of the land." In this case, appellants' ancestors voluntarily abandoned possession of the land in controversy in 1882—possibly in 1885—and appellants asserted no claim under the prior possession of their ancestors until 1933, a period of 50 years. Against appellants' claim of prior possession, appellees entered upon the land under deeds in a regular chain of title from and under the original grantee, executed after appellants' ancestor abandoned her possession, and held and claimed the land, and paid taxes thereon for a period of 8 years. From the date of the original grant appellees and those under whom they held asserted an active claim to the land and for many years held it by actual possession—thus, there was a tenant on the land for appellees' predecessor in title from 1876 to 1886. There was no evidence of a nonclaim by appellees to the Toliver survey. These facts constitute a complete answer to appellants' claim that they were entitled to an instructed verdict on the theory of "prior possession."

In our judgment the issue of "prior possession" was not raised in appellants' favor on the undisputed evidence. The rec-ord title to the land in controversy was in appellees, with an active claim by them and those under whom they hold to the entire Toliver survey from the date of the original grant, with many years of actual possession, use, and occupancy; the undisputed evidence was to the effect that appellants abandoned their possession in 1882—possibly in 1885—and did not assert any sort of claim to the land for a period of 50 years. These facts explain appellants' prior possession and negative the issue that the prior possessors had title. 41 Tex.Jur. 536, 547; Southwestern Settlement & Development Co. v. Village Mills Co. (Tex.Civ.App.) 245 S.W. 975.

■ The issue of a lost muniment of title in appellees from the original grantee was not raised by the evidence. The existence of a lost deed is not presumed from the mere fact of the occupancy of the land by a claimant; that is only one element of the proof. The evidence must show an open and continuous assertion of title by the claimant, accompanied by the exercise of acts of ownership over the land in question, with a nonclaim by the true owner. The claimant also must assert title to well-defined metes and bounds. In Sulphen v. Norris, 44 Tex. 204, our Supreme Court said: "In all cases where a party seeks to hold by a presumed grant he had to show long possession, adverse exclusion, and to well-defined metes and bounds."

In 2 Tex.Jur. 24, 26, 27, it is said: "The foundation of the presumption or inference is, in any case, acquiescence by the true owner in the claimant's assertion of title; and to a finding of acquiescence, it is essential that the owner shall have had knowledge or notice of the adverse claim."

In this case there was no act of ownership or claim of title beyond the actual inclosures of appellants' ancestor, and these inclosures were not identified either by the pleading or proof.

■ On the theories of "prior possession" and "lost deed," appellants give great importance to the deed from the original grantee to Kesler, executed in 1867. They say that this was a quitclaim deed, giving the world notice of a defect in the title of the original grantee; that the original grantee did not convey the land, but only his right, title, and interest in the land. The character of the Kesler

deed does not support appellants' theories. Substantial consideration was paid by Kesler for the land, and, as stated above, there has been a continuous claim to the land by appellees and those under whom they hold from and under the Kesler deed, with actual entry and occupancy.

On the issue of 10-year limitation we overrule appellees' contention that, by pleading specially the 10-year statute of limitation, appellants abandoned their general allegations of trespass to try title, and were limited to their limitation claim, and therefore appellants could not rely upon a presumption of title on the theory of prior possession. Of course, it is the established law of this state that a plaintiff in an action of trespass to try title, who specially pleads his title, abandons his general allegations and is restricted to the matter set forth in his special plea. 41 Tex.Jur. 562, and authorities therein cited. But a plea of the statute of limitation is not a special plea within that general rule. Mayers v. Paxton, 78 Tex. 196, 14 S.W. 568; Brownfield v. Brabson (Tex.Civ.App.) 231 S.W. 491. There is authority for the proposition that the plaintiff may plead the statutes of limitation, not merely as a source of title, but as the source of title. Cornish v. Houston Terminal Land Co. (Tex.Civ.App.) 257 S.W. 575. But that rule could have application only where it affirmatively appears upon the face of the petition that the plaintiff is relying only on his limitation title, and appellants' petition in this case is not subject to that construction.

On their theory of 10-year limitation, appellants advance the following proposition: "At the date of plaintiffs' entry, and at the date of the deed from Toliver (Toliver to Kesler), plaintiffs' possession was notice of claim to 640 acres." As we understand the decisions of our Supreme Court, this proposition does not correctly state the limitation law of this state. It is well settled that the limitation claimant must be not only in actual possession, use, and enjoyment of a part of the claimed premises, but he must assert an actual claim to the land covered by the limitation statutes; that is, an actual claim to a specific tract of the 640 acres or 160 acres, or an actual claim to his improvements with a claim to 640 acres or 160 acres according to the statute covering his claim. No inference will be indulged that the limitation claimant is claiming beyond his inclosures; he must prove the extent of his claim. His possession of a part of the land with proof of use, occupancy, and claim limited to the inclosures, does not raise an inference of claim beyond the inclosures. This was the holding of this court in the recent case of Musgrove v. Foster Lumber Co. (Tex.Civ. App.) 89 S.W.(2d) 287, 288, where we cited and reviewed authorities from the Supreme Court directly in point.

While appellants sustain their theory of limitation to the land actually held by their ancestors, this land was not described and claimed in the pleadings, and was not identified on the ground by the evidence. Therefore the lower court did not err in instructing against this claim. On this point in Musgrove v. Foster Lumber Co., supra, we said: "By their pleadings appellants did not describe the land held and claimed by Doc Kelley under his inclosures, nor was there any testimony locating the inclosures upon the ground. On this statement, under the authorities, the verdict was properly instructed in favor of appellees, even as to the improvements. Manning v. Standard Oil Co. of Kansas (Tex.Civ.App.) 67 S.W.(2d) 919; Furlow v. Kirby Lumber Co. (Tex.Civ.App.) 53 S.W.(2d) 642; Lee v. Kirby (Tex.Civ. App.) 277 S.W. 225."

The court did not err in excluding the evidence of appellants in support of the claim of their ancestors. Their testimony did not extend the claim of their ancestors beyond their inclosures, and was therefore immaterial on the issue of limitation, except as to the improvements—and as to the improvements their testimony was immaterial because the improvements were not identified by pleadings or proof.

As the court correctly instructed a verdict in favor of appellees for the reasons stated above, we pretermit a discussion of their claim to the land under their plea of 5-year limitation.

The judgment of the lower court is in all things affirmed.

On Rehearing

Appellants ask for corrected and additional fact conclusions.

(a) They complain of the following conclusion: "Ferdinand and Elizabeth Bartee entered upon the Toliver Survey and established their improvements thereon in 1859."

Appellants' criticism is: "There is no evidence in the record as to when Bartee went upon the land." There was evidence that he was there in 1859. It was appellants' burden to prove a possession prior to 1859, if they wanted to raise that issue; that they did not do. The criticism of this fact conclusion is overruled.

(b) In the original opinion we made the following conclusion: "They held these improvements jointly, claiming the land actually occupied by them until the death of Ferdinand Bartee in 1870."

In criticism, appellants say: "There is no scintilla of evidence in this case that Bartee and his wife held the improvements jointly or that either claimed the land actually occupied or that land they claimed or that they claimed any land." Appellants' criticism is overruled; the evidence clearly raised the issue that Bartee and his wife made the improvements as husband and wife, and occupied the land jointly as husband and wife until his death in 1870. Supplementing, but in no way limiting, the fact conclusions on this issue stated in the original opinion, we make the following additional finding requested by appellants: "Some time prior to the year 1859, Ferdinand Bartee, with his wife, Elizabeth, entered upon the Toliver Survey and established their home thereon and made improvements thereon, consisting of a residence and out-houses and the fencing and placed into cultivation a portion of said survey, the exact amount of which is not shown by the evidence. Said Ferdinand continued to reside upon, cultivate, hold actual possession of, use and enjoy said land up to the time of his death in 1870. In that year, while so residing upon said property, he died and is buried in the community grave yard near said place where there is also buried two of his children who died in infancy, one in 1853 and the other in 1855."

(c) In the original opinion we said: "After his death, his wife, with the children born to her and her deceased husband, continued in possession of the improvements, claiming the same until she married a second time in 1879. Immediately after her second marriage she moved off the Toliver survey and remained off of it for 6 months, but during that time it was occupied and held for her by a tenant. At the end of the 6-month period she moved back on the land and remained there until some time in 1882—possibly in 1885—claiming her improvements as she had done continuously since she made her original entry in 1859."

In criticism of this conclusion, appellants say: "It is unfair to say that this wife continued in possession of the improvements, claiming the same until she married. There is no evidence in the record that her possession was limited to her improvements, or that she claimed the improvements as separate from the land or property." Bearing in mind that appellants were plaintiffs below, the evidence clearly supports our fact conclusions on this issue. However, supplementing, but not limiting, this fact conclusion, we make the following additional finding at appellants' request: "The wife, Elizabeth, with the children, remained upon the property after the death of her husband, continuing such possession, occupancy and use until in 1879, when she married a second time and moved from the land with her second husband, remaining with him off said survey approximately six months, during which time the land, premises and improvements were occupied and held for her by a tenant. After about six months she returned to the land where she continued to reside under the same circumstances and conditions until as late as 1882, possibly 1885."

(d) In our original opinion we say: "Elizabeth Bartee died in 1909. From the time she moved off in 1882—possibly 1885—until her death, neither she nor any of the appellants claimed the land in any way, nor were they in possession of any part of the Toliver survey. After her death none of the appellants asserted any sort of claim to the land in controversy, or to any part of the Toliver survey until 1933, when one of the sons entered upon the land, claiming 640 acres under the possession and claim of Ferdinand and Elizabeth Bartee."

Against this conclusion appellants offer the following criticism: "It is true Elizabeth died in 1909. It is not to be found in the evidence by statement or insinuation that she did not claim the land in any way up to the time of her death. It is correct to say that neither she nor any of the appellants were in actual possession of any part of the Toliver Survey. It is not correct to say nor can it be found by anything stated by any witness or from any circumstance, that after her death none of the appellants asserted any sort of

claim to the land in controversy or to any part of the Toliver Survey." This criticism is overruled. We have stated the facts clearly. The burden of proof rested upon appellants to prove every essential element of their cause of action. Where there was no proof, it is the duty of this court to find that issue affirmatively against them. Supplementing but not limiting this conclusion, we find as follows at appellants' request: "When Elizabeth left the land in 1882 or 1885, she went to live with one of her daughters in West Texas and died there in 1909 and from the date of her leaving neither she nor any of the appellants were in actual possession of any part of the Toliver Survey until one of the sons, before the institution of this suit, entered upon same in 1933 and was residing thereon at the time of the time of the institution of this suit."

On the facts thus summarized and brought forward by appellants, we again make the conclusion that the Bartees abandoned their possession of this land in 1882 or 1885.

(e) In our original opinion we made the following conclusion: "No testimony was offered that Ferdinand and Elizabeth Bartee claimed any land not within their inclosures."

Against this conclusion, appellants offered the following criticism: "There was no testimony offered that they claimed any land within or not within their inclosure. The facts are that what they claimed there was not within the possibility of proof because of their death, the remoteness of the time and the lack of living witnesses." It was appellants' burden to prove the extent of their claim. There is no presumption that they claimed outside of their boundaries. Supplementing, but not limiting, our conclusions on this issue, we make the following additional conclusion at appellants' request: "No testimony was offered as to any claim of any land on the Toliver Survey with or without their inclosure or as to the extent of such claim or its location, except the facts hereinbefore recited and the inferences that are legitimately to be drawn therefrom."

(f) On the issue of the payment of taxes, at the request of appellants, we find as follows: "The possession held by Ferdinand and Elizabeth Bartee was peaceable. There is no evidence of any taxes having been paid on the land by any per-

son prior to 1905, or subsequent to 1913, but between those dates appellees rendered a portion of the Toliver Survey for taxes and paid the taxes thereon and there is no evidence of any other rendition or payment of taxes on the survey by any person at any time."

In all other respects, appellants' motion for additional fact conclusions is overruled; the motion for rehearing is in all things overruled.

On Second Rehearing.

Fact conclusion (f) in our opinion on rehearing, on the issue of the payment of taxes, is withdrawn, and in lieu thereof we adopt the certificate of the county tax assessor and collector of Polk county, as follows:

"To Whom It May Concern:

"This is to certify that with respect to 2559 acres out of the Geo. W. Tolliver Survey in Polk County, Texas, Abst. No. 561, being all of said survey except the Miller 200 acres adjoining the most Westerly line thereof, and out of the West side thereof, all taxes levied during the years 1903, 1904, 1905, 1906, 1907, 1908, 1909, 1910, 1911 and 1912 were duly rendered and paid; that the acreage in said survey upon which Wm. Carlisle & Company paid taxes from the time said Wm. Carlisle & Company began rendering the land for taxes prior to 1904 was 2559 acres, more or less; that all taxes for the years 1910, 1911, and 1912 were paid upon due and regular rendition by West Lumber Company upon said 2559 acres, more or less, out of said survey, which contains in all 2759 acres, being the 2559 acres referred to and the Miller 200 acres, more or less, all of which is fully shown upon the records of the office of the County Tax Assessor and Collector of Polk County, Texas, which said office I now hold; that thereafter West Lumber Company and W. T. Carter & Bro., during the respective years of their ownership, have paid all taxes upon due and regular renditions upon the land now owned by W. T. Carter & Bro. in said survey, same being 1392 acres, more or less."

This certificate of the tax collector supports the following fact conclusion requested by appellees: "Between 1905 and 1913 the appellees and/or their predecessors in title duly rendered and paid all taxes upon all of the George Toliver Survey except certain tracts not involved in

this cause; thereafter West Lumber Company, appellees' predecessor in title, paid taxes duly upon regular renditions upon all of the land involved in this cause until same was sold to W. T. Carter & Bro., and thereafter and until the time this cause was tried W. T. Carter & Bro. duly paid, upon due and regular renditions, all taxes upon all land owned by W. T. Carter & Bro. in said survey, which includes the land involved in this case."

In all other respects appellees' motion for rehearing is overruled.