Chesley E. DAVIS et ux., Appellants,

v.

Mrs. Ed CROCKETT et vir, Appellees.

No. 16637.

Court of Civil Appeals of Texas.

Dallas.

Nov. 26, 1965.

Moses & Truett, McKinney, for appellants.

Boyd, Veigel & Gay, McKinney, for appellees.

BATEMAN, Justice.

The appellants Chesley E. Davis and wife appeal from a judgment granting the appellees Mrs. Ed Crockett and her husband specific performance of an oral contract for the sale of a vacant lot in the town of Prosper, Texas. Appellants denied having made the contract and also pled the Statute of Frauds and the two and four year statutes of limitation. The jury found in response to special issues: (1) on or about December 17, 1957 Crockett paid $315 to Davis; (2) on such occasion Davis agreed to sell and Crockett agreed to buy the lot in question for $315; (3) which was the sum agreed upon as the full purchase price of the lot; (4) Crockett took possession of the lot immediately or soon after the $315 was paid to Davis; (5) Crockett and his wife made permanent and valuable improvements on the lot after taking possession; (6) which improvements were made with the consent and/or acquiescence of Davis; and (7) the $315 paid by Crockett to Davis was not intended as a deposit

of escrow money for an option to purchase the lot.

■ A leading case setting forth the essential elements of a valid parol contract for the sale of land is Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216, wherein it was held that:

"* * * to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced."

It will be seen from the verdict that appellees obtained jury findings establishing those essentials. Appellants seek reversal on four points of error.

By their first point appellants contend that the facts of this case make applicable the general rule of the Statute of Frauds, Vernon's Ann.Civ.St., Art. 3995, making unenforceable contracts for the sale of land unless in writing and signed by the party to be charged therewith, and not the exception enunciated by Hooks v. Bridgewater, supra. They deny that appellees took actual possession of the lot and made permanent valuable improvements thereon.

However, the evidence is undisputed that in the year 1957 Davis bought certain lots in the town of Prosper forming a tract 180 feet wide and 140 feet deep, for a total consideration of $630; that in October 1957 Davis began the construction of his home on the east half of the tract, leaving the west half vacant, Davis having divided the tract "in the center" making two lots 90 feet in width; that the relationship between the wives of Davis and Crockett is that Mrs. Crockett's mother is the step-mother of Mrs. Davis, both Mrs. Crockett and Mrs. Davis having been reared in the same home "just like sisters"; that in December 1957 Crockett gave Davis a check for $315, which Davis cashed.

The testimony as to the purpose of the check is conflicting; Davis testified that Crockett wanted to advance the $315 to hold the lot so that in case something should happen to him his wife would have a place on which to build a home; that he told Crockett it wasn't necessary, that he would hold the lot without the check, but that Crockett insisted on giving it and that he "took it with the understanding that Mrs. Crockett was to use the lot in case of emergency to build her a home on * * * or his money would be refunded," but that the total purchase price was not agreed on or discussed. Crockett testified that on December 17, 1957 Davis agreed to sell him the lot on the west side for half the cost of the entire tract, or $315, that he gave Davis the check for $315, and that Davis promised to give them a written statement and a deed "in the very near future." Mrs. Crockett corroborated this testimony.

There was testimony that in 1958 Mr. and Mrs. Crockett met with Mr. and Mrs. Davis on the lot in question, and while all four were there Crockett dug a trench a few inches deep and a few inches wide on the line between the two lots for the entire length of 140 feet; that Mrs. Crockett and Mrs. Davis followed along setting out flower bulbs in the trench. Crockett testified that Davis criticized this method of planting the bulbs, stating that when Crockett would come in with the maintainer to grade the lot he would destroy them, but Crockett replied that he would be careful not to do so. Crockett also testified that he had the lot in question plowed and mowed, that he used his own tractor and maintainer, driving the tractor and hiring a man to ride the maintainer; that when they plowed it they threw the dirt to the center because he "wanted the lot higher in the center on the slope of the hill," all

of which was in the spring of 1958, about six months after the check had been given; that the first thing they did was to clear some bushes off of the back of the lot, for which he hired one Les Martin and that he and Martin removed from the lot some persimmon sprouts, willows, ash and some redwoods, together with unwanted weeds like Johnson grass, sunflowers, etc.; that they cleaned the lot off before they started leveling it; that the bulbs were put in about November 1, 1958, and that he supervised the working on the lot from the day he bought it, killing the noxious weeds thereon and having it one-wayed or plowed a dozen times, and that he considered what he did as major improvements on the lot; that he knows the value of farm labor and the customary prices paid for farm equipment, and that the work he has done on the lot had a minimum value of $100. Davis testified that he did not know of the grubbing of stumps and plowing and mowing which Crockett said he had done or had had done, but that he thought that Crockett had had the county "to go over it with a maintainer. It wasn't level." Crockett also testified that both Mr. and Mrs. Davis saw him working on the lot in the years 1958 and 1959; that he bought the property to build a home on it.

■ We think the evidence outlined above was sufficient to support the jury findings that Crockett took possession of the lot in question soon after the giving of the $315 check and made permanent and valuable improvements of the land with the consent of the seller.

In Davis v. Douglas, Tex.Com.App., 1929, 15 S.W.2d 232, where the jury had found that the donee of a tract of land had made permanent and valuable improvements of the value of $30, consisting of repairing the garden fence, cleaning out the well, and placing some new blocks under the gallery of the dwelling house, the value of the lot and improvements at the time of the gift being $800, the court said "it cannot be said, as a matter of law, that said improvements were of such nature and value as to require a court of equity to disregard them in determining whether or not the parol gift should be enforced."

In Dawson v. Tumlinson, Tex.Civ.App., 236 S.W.2d 160, reversed on other grounds 150 Tex. 451, 242 S.W.2d 191, it was held that evidence of improvements on the property consisting of repairing the roof to the gallery and repairing the water pump, at the total cost of $75, was sufficient to raise a jury question as to whether the improvements were substantial.

■ The primary purpose of the Statute of Frauds is of course to prevent fraud and perjury in certain types of transactions by requiring the agreement of the parties to be evidenced by a writing signed by them. But, as pointed out in Hooks v. Bridgewater, supra, the strict enforcement of the general rule of the statute can itself result in fraud. It was due to the concern of the equity courts to prevent the perpetration of fraud that the exception relied on by appellees herein was created. We hold that there is sufficient evidence of probative force in this record to support the jury findings of the essential elements of that exception. Appellants' first point is therefore overruled.

By their second point of error on appeal appellants contend that the cause of action, if any, was barred by the two and four year statutes of limitation. Appellees filed their original petition on September 1, 1959 alleging a valid contract of sale for the lot in question and praying for specific performance thereof. They thereafter filed four amended petitions. In the original petition it was not alleged whether the contract was oral or in writing. In the first amended original petition it was alleged that the check for $315 constituted a memorandum in writing since the defendant Davis endorsed the same, bringing the case within the statute. It was not until the filing of their second amended original petition on September 28, 1960 that it was specifically alleged that the contract was

an oral one. In their third amended original petition, filed October 29, 1960, they alleged an oral contract and the making of valuable and permanent improvements with knowledge and consent of appellants. It is argued that appellees have shifted their causes of action and changed the nature of the lawsuit so that they should not be afforded the protection of Vernon's Ann.Civ.St., Art. 5539b. We do not agree with appellants.

In the original petition and all four amended petitions appellees alleged a contract of sale and prayed for specific performance. Only one contract or meeting of the minds was alleged, regardless of how that agreement was reached, and regardless of whether it was evidenced by a writing signed by the parties or by testimony of their oral statements. We think appellees were entitled to the protection of Art. 5539b, V.A.C.S., the pertinent portion of which is:

> "Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction and occurrence."

Appellees contend that the contract was not actually breached until July 27, 1959, but it is not necessary for us to determine the correctness of that contention because the original petition was filed within two years after the making of the contract, making both limitation statutes obviously inapplicable. Global Corporation v. Vincent, 156 Tex. 398, 295 S.W.2d 640. Appellants' second point of error is overruled.

Appellants' third point of error is as follows: "This cause should be reversed because the verdict and judgment are contrary to, and not supported by the evidence."

This point fails to direct our attention to the errors relied upon, as required by Rule 418, Texas Rules of Civil Procedure. In McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643, 646, the point asserted that "the trial court erred in rendering judgment that the plaintiff take nothing, since the judgment of the court is contrary to the law and the evidence," and the Supreme Court, speaking through Mr. Justice Walker, said: "It is so general as to encompass any and every error committed by the trial court, and therefore means nothing."

Pursuant to the rule announced in Fambrough v. Wagley, 140 Tex. 577, 169 S.W. 2d 478, 482, however, we have studied the statement and argument under this point but find nothing there to direct our attention to any specific error. We therefore overrule the third point of error as failing wholly to comply with Rule 418, T.R.C.P.

By their fourth point of error appellants seek reversal because the land was their homestead at the time of the alleged oral contract. They cite Norwood v. Childress, Tex.Civ.App., 250 S.W.2d 927, wr. ref. n. r. e. as holding generally that a parol agreement to convey a part of a homestead is void because of noncompliance with Art. 1300, V.A.C.S. requiring the joinder and separate acknowledgment of the wife in any conveyance of the homestead. We conclude that this point is without merit for several reasons.

The contention that the lot in question was a part of appellants' homestead appears for the first time in appellants' brief. It is not mentioned in any of their pleadings, nor in their amended motion for new trial, nor in the list of "Assignments of Error" appearing at the back of their brief. The constitutional and statutory safeguards against improvident disposal or dissipation of the homestead

constitute a privilege which may be waived by failure to assert the same in the trial court by pleading and proof. Note the following from 28 Tex.Jur.2d, Homesteads, p. 380, § 9:

"In any case, where the homestead right is relied on, either as a cause of action, or as a defense, the homestead character of the property must be pleaded and proved. Failure to do so may result in the loss of the right."

Not having raised the issue by their pleadings, the appellants must be held to have waived the right to defend on the ground of noncompliance with Art. 1300, V.A.C.S. Shonaker v. Citizens' Loan & Investment Co., Tex.Civ.App., 8 S.W.2d 566, 568, wr. ref.; Ferguson v. Smith, Tex.Civ.App., 206 S.W. 966, wr. ref.; Balcomb v. Vasquez, Tex.Civ.App., 241 S.W.2d 650, wr. ref. n. r e.

We also hold that appellants waived this point by failing to include it in their amended motion for new trial. Rule 374, T.R.C.P.; 3 Tex.Jur.2d, Appeal and Error —Civil, p. 460, § 184; Shelton v. Ector, Tex.Civ.App., 364 S.W.2d 425, 427, no wr. hist.

Moreover, it is undisputed that at the time of the trial appellants had completely abandoned their homestead in Prosper. In December 1960 appellants sold the home they had built on the east half of the tract and moved to Dallas. This case was tried in March 1965. If the sale were ineffective at the time of its making because of the homestead character thereof, it would nevertheless become operative when the property ceased to be a homestead. Marler v. Handy, 88 Tex. 421, 31 S.W. 636; Irion v. Mills and Halbert, 41 Tex. 310; Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619. See also Lewis v. Brown, Tex.Civ.App., 321 S.W.2d 313, wr. ref. n. r. e.

No reversible error has been demonstrated, and the judgment is

Affirmed.