Roberto **HIDALGO** et al., Appellants,

v.

Tony **LECHUGA**, Appellee.

No. 5809.

Court of Civil Appeals of Texas.

El Paso.

Oct. 5, 1966.

Rehearing Denied Oct. 26, 1966.

Galvan & Galvan and Ben A. Endlich, El Paso, for appellants.

Gerald B. Shifrin and Arturo R. Aguirre, El Paso, for appellee.

## OPINION

CLAYTON, Justice.

Suit in trespass to try title brought by Tony Lechuga, appellee here, against Roberto Hidalgo, Maria Hidalgo, a feme sole, Bernie Rios and wife, Ofelia H. Rios, Carolina Hidalgo, a widow, and her minor children: Maria Cristina Hidalgo, Rosalia Hidalgo and Armando Hidalgo, represented by a guardian ad litem, appellants here.

In plaintiff's second amended original petition, on which trial was had, plaintiff alleges that he acquired title from one Luis Velasco and wife, Maria del Refugio Velasco, and that he and those from whom he acquired title had held peaceable, continuous and adverse possession of a certain parcel of real estate located in El Paso County, Texas, improving, using and enjoying the same and paying the taxes thereon for more than ten consecutive years prior to March 23, 1962, when he was dispossessed by defendants. Plaintiff claims title under the ten-year statute of limitations, Art. 5510, V.A.T.S., his predecessors in title having taken possession of the property in 1943. That their possession and use of the property was plain, open and obvious, and adverse to any claim of right of the defendants.

Further, that the said Luis Velasco and wife, Maria del Refugio Velasco, entered into an oral contract to purchase the property from one Gaspar Hidalgo, under whom the defendants claim, for the sum of Two Hundred ($200.00) Dollars, to be paid One Hundred ($100.00) Dollars down and the balance payable in $10.00 and $20.00 payments, the total amount being paid in full, the last payment having been made in 1957. That the improvements made by them were valuable and permanent, and all taxes were paid by them on said property, all with the knowledge and consent of their vendor, Gaspar Hidalgo, and during their occupancy of the premises. The prayer of the petition was the usual prayer in a trespass to try title suit.

The case was submitted to a jury on special issues, which were answered as follows:

1. That Luis Velasco and wife orally purchased the property from Gaspar Hidalgo.

2. That the Velascos, after purchasing the property, went into possession of the same.

3. That they were to pay $250.00 for the property.

4. That they did pay said sum.

5. That they erected valuable and permanent improvements on the land in question.

6. That plaintiff, Tony Lechuga, and those under whom he claims, had been in peaceable and adverse possession of the property for a period of ten years or longer prior to June 1, 1962 (when suit was filed).

On this verdict, judgment was entered by the court for plaintiff, Tony Lechuga, for title and possession of the property against all defendants, who took nothing, removing cloud and setting fees for the guardian ad litem against defendants Roberto Hidalgo, Maria Hidalgo, a feme sole, Bernie Rios and wife, Ofelia H. Rios.

Appellants present seven points of error: (1) That the trial court erred in failing to grant appellants' motion for new trial because there was an irreconcilable conflict between Issue No. 1 and Issue No. 6; (2) that the submission of these issues was error since findings in the affirmative thereon would and did result in an irreconcilable conflict; (3) that the court erred in rendering judgment on the passage of title on an oral contract where there was no evidence to support the jury's finding on Issue No. 5, that the Velascos made valuable improvements; (4) that there was error in rendering judgment on the jury finding of adverse possession under the ten-year statute of limitation since Gaspar Hidalgo committed acts of ownership over the property such as to preclude a finding of adverse possession; (5) that Maria Cristina, Rosalia and Armando Hidalgo are minors and adverse possession could not run as to them; (6) that there was error in submitting Issue No. 1 since there was no evidence to show that the elements necessary to relieve a parol sale of land from operation of the statute of frauds was presented; (7) that there was error in allowing testimony of witnesses in violation of Art. 3716, V.A.T.S., the dead man's statute.

 It is considered that Point of Error No. 1 must be overruled and, perforce, Point of Error No. 2 must also be overruled. We find no irreconcilable conflict in the jury's answers to Issue No. 1 and Issue No. 6. Plaintiff was legally entitled to plead in a proceeding in trespass to try title the interest which he claims in the premises, whether it be a fee simple or other estate (Rule 783, T.R.C.P.), and can also plead limitation. Meyer v. Paxton, 78 Tex. 196, 14 S.W. 568, 569 (1890):

"* * * Limitation, when relied upon, either as a ground of action or of defense, must be specially pleaded, and the fact that this has been done should not preclude a plaintiff, in an action of trespass to try title, from establishing any other title upon which he may rely."

See also Bartee v. W. T. Carter & Bro., 100 S.W.2d 378, 382 (Tex.Civ.App., 1936, dism.):

"On the issue of 10-year limitation we overrule appellees' contention that, by pleading specially the 10-year statute of limitation, appellants abandoned their general allegations of trespass to try title, and were limited to their limitation claim, and therefore appellants could not rely upon a presumption of title on the theory of prior possession. Of course, it is the established law of this state that a plaintiff in an action of trespass to try title, who specially pleads his title, abandons his general allegations and is restricted to the matter set forth in his special plea. 41 Tex.Jur. 562, and authorities therein cited. But a plea of the statute of limitation is not a special plea within that general rule. Mayers v. Paxton, 78 Tex. 196, 14 S.W. 568; Brownfield v. Brabson (Tex.Civ.App.) 231 S.W. 491. There is authority for the proposition that the plaintiff may plead the statutes of limitation, not merely as a source of title, but as the source of title. Cornish v. Houston Terminal Land Co. (Tex.Civ. App.) 257 S.W. 575. But that rule could have application only where it affirmatively appears upon the face of the petition that the plaintiff is relying only on his limitation title, and appellants' petition in this case is not subject to that construction."

Furthermore, we do not consider that there is an irreconcilable conflict in the answers to the two issues. The affirmative answer to Issue No. 1, and the answers to Issues 2, 3, 4 and 5 would support a judgment for plaintiff, and so would the jury's answer to Issue No. 6. In 57 Tex.Jur.2d 291–293, § 551, Material Conflicts, it is recited:

"Since there is no scale of priority for findings, where two findings regarding a material fact are so constituted that both cannot be true, there is a fatal conflict, and neither will be permitted to stand.

"Mere inconsistency between two sets of findings is not fatal. But where one answer would establish a cause of action or defense, and another would destroy it, or where one finding would warrant a judgment for a party while another would warrant a judgment for his adversary, the findings are irreconcilable and cannot be permitted to stand."

Such is not the case here, and Points of Error Nos. 1 and 2 are overruled.

In Point of Error No. 3 it is contended that there is no evidence to support the jury's finding on Issue No. 5 that the Velascos made valuable improvements, and thus the trial court erred in rendering judgment on the passage of title on an oral contract. The case of Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116, 15 A. L.R. 216 (1921) is urged by appellants as the leading case on oral contracts under the statute of frauds; but we feel that the conditions as set out therein have been fulfilled in the case before us. The cited case recites:

"From an early time it has been the rule of this court, steadily adhered to, that to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient. This has been the law since Garner v. Stubblefield, 5 Tex. 552. Nor is possession of the premises by the vendee. Ann Berta Lodge, [etc.] v. Leverton, 42 Tex. 18. Each of these three elements is indispensable, and they must all exist."

And in the same case, quoting the Texas Supreme Court case of Wooldridge v. Hancock, 70 Tex. 18, 6 S.W. 818:

" 'But it is necessary to the validity of a parol sale or gift of land in Texas, however the rule may be elsewhere, that possession be delivered and substantial and valuable improvements made, with the consent or knowledge of the vendor, upon the faith of such gift or sale.' [Citing Ann Berta] Lodge, [etc.] v. Leverton, 42 Tex. 18, and Eason v. Eason, 61 Tex. [225] 227."

See also Truck Insurance Exchange v. Schuenemann, 391 S.W.2d 130, 134 (Tex. Civ.App., 1965; ref., n. r. e.); Davis v. Crockett, 398 S.W.2d 302, 304, syl. 1 (Tex. Civ.App., 1965; n. w. h.); and Hernandez v. Dominguez, 399 S.W.2d 385, syl. 3 (Tex. Civ.App., 1966; ref., n. r. e., 405 S.W.2d 57). Have these requirements been met here? It must be kept in mind that plaintiff is claiming through Luis and Maria del Refugio Velasco, who claim through Gaspar Hidalgo, by oral purchase, or by virtue of the statute of limitations; that the pleadings allege the purchase price from Hidalgo to have been $200.00, although the jury found that the Velascos agreed to pay, and did pay, $250.00 for the property. In any event, the price paid was a relatively small amount. Mrs. Carolina Hidalgo, widow of Gaspar Hidalgo, who is the common source of title, having been married to him from July, 1953 until his death in June, 1957, testified that Gaspar and Maria del Refugio Velasco were brother and sister. She further testified that Maria del Refugio and her husband, Luis Velasco, were buying some property from her husband, Gaspar, and that they were living on the property when she (Carolina) married Gaspar; that she visited the Velascos. That at first there was a lumber structure and then later an adobe structure on the property. That the Velascos gave Gaspar $100.00 at first, and another $100.00 "was given to him the best way they could in $5.00 and $10.00", the last payment of $20.00 being in lumber.

Carolina Hidalgo filed a disclaimer in this cause.

In his deposition, Luis Velasco first identified the deed of the property in question from him and his wife to plaintiff, Lechuga, in 1962. He then testified that he bought the property from Gaspar Hidalgo in 1943, for $250.00 paid, in installments, the last being in lumber. He stated that he "built a home and a large corral around it". He testified that "the house was four rooms, two adobe, one from lumber", and one of "cardboard". He stated he installed lights and gas, but hauled his water, because it was too high.

Mrs. Lazaro Padilla was a neighbor of the Velascos. She testified that when the Velascos moved on the property "maybe" in 1952, there was nothing built on the property, but the Velascos built a house, an adobe room and two rooms of lumber, and a fence around the property—a board or picket fence, which encircled part of the property. Mrs. Padilla stated she had known Gaspar Hidalgo for a number of years before she met the Velascos; had known his first wife, Petra, and saw her when the Hidalgos went to visit the Velascos on several occasions, and later Gaspar went to visit the Velascos by himself. She testified that the house had electricity and gas, but no water.

Mr. Ramon Montes testified he lived across the alley from some people he later learned were named Velasco, and he described the adobe house they lived in, the fence on the property, and that he was aware they were living there some time after 1950 until they moved away, but did not recall when that was.

There is other testimony, but without burdening this opinion any further, suffice it to say that the jury was fully justified, from the record, in finding that Luis Velasco and his wife, Maria del Refugio Velasco (under whom appellee Lechuga claims), paid the full consideration for the property in question, i. e., $250.00. Further,

that the Velascos, as vendees, took possession of the property, and third, that considering all facts in evidence, including the purchase price of the property, the Velascos placed substantial and valuable improvements on the property, with at least the implied knowledge and consent of the vendor, Gaspar Hidalgo, since he visited on the property from time to time while the Velascos were occupying and improving the property. Thus, it is necessary to overrule Point of Error No. 3, and also No. 6, reciting that the court erred in submitting Issue No. 1, in that there is no evidence to show that the elements necessary to relieve a parol sale of land from the operation of the statute of frauds was presented. We believe that the authorities above discussed fully justify an adverse ruling on Point of Error No. 6, which is in accordance with the findings of the jury.

■ Point of Error No. 4 challenges the action of the court in rendering judgment on the jury finding of adverse possession under the ten-year statute of limitations, based on the fact that Gaspar Hidalgo committed acts of ownership over the property of such a nature as to preclude an adverse possession finding. We find the following statement in appellants' brief which we take to be made in support of this point of error, although we are not referred to any place in the Statement of Facts where this evidence may be found:

"The evidence further showed that as late as 1948, Gaspar Hidalgo deeded a portion of the property in question to the City of El Paso—this is an act of ownership and will not lend itself to the theory of adverse possession propounded by Appellee."

The deed referred to was executed by Gaspar Hidalgo and his then wife, Petra Plasencio Hidalgo, on October 2, 1948. The deed recited a consideration of $60.00 and stated it was in final settlement between the parties "of all matters in controversy between them arising out of the acquisition of the hereafter described property by the

Grantee, including actual or threatened Condemnation Proceedings"; in other words, it was in settlement of an actual or threatened condemnation suit against Gaspar Hidalgo, who undoubtedly at that time was shown on the records as the titular owner of the property. The strip acquired was a drainage ditch across the front of the property, consisting of 2,521 square feet, more or less, or .058 of an acre, more or less. This incident cannot be viewed as a positive act on the part of Hidalgo intended as antagonistic toward Velasco's claim, but merely as the settlement of an actual or threatened lawsuit brought against Hidalgo in which he, as title holder of record, received an offer of settlement in the amount of $60.00, which was accepted. The record does not show whether this amount was shared with the Velascos, but even if it were not, we cannot view Hildago's action under the circumstances as irreconcilable with the position of adverse possession taken by Velasco. Point of Error No. 4 is overruled.

■ The fifth point of error presents the claim that Maria Cristina Hidalgo, Rosalia Hidalgo and Armando Hidalgo were minors against whom adverse possession could not run. The minors were the children of Carolina and Gaspar Hidalgo, and the former testified at the trial in May, 1965 that Maria Cristina was 13 years of age, Rosalia was 12, and Armando Hidalgo was 10 years of age. The suit was filed June 1, 1962. On July 16, 1962 Carolina Hidalgo filed a disclaimer for herself individually, and as next friend of her children, the minors. On September 15, 1964 an attorney was appointed guardian ad litem of the minors. On May 20, 1965 the attorney, as guardian ad litem of the minors, filed an answer for the minors to Lechuga's second amended original petition, but nowhere in such pleading or in any other pleading is any defense urged on the ground of minority. It is the law that as to each minor, limitations did not begin to run until such minor attained his or her majority. Louisiana & Texas Lumber Co. v. Lovell,

147 S.W. 366, syl. 2 (Tex.Civ.App., 1912; n. w. h.). But we feel that the failure to raise this issue in any pleadings waived the point. Lewis v. Saylors, 37 S.W.2d 760, 761, syl. 2 (Tex.Civ.App., 1931; n. w. h.):

"It is insisted by defendants in their brief that the ten-year statute of limitation has not run against all the defendants for the reason that ten years have not expired since some of them reached their majority. From the facts developed upon the trial, this would seem to be true, but the pleadings of defendants do not make the infancy of any of the defendants an issue; and, in the absence of pleadings, infancy will be waived. Any pleading seeking to avoid a plea setting up the statute of limitation should state such facts as show the statute could not have run. Krause et al. v. Hardin et al. (Tex. Civ.App.) 222 S.W. 310."

See also Morton v. Morton, 286 S.W.2d 702, 707, 708, syl. 11 (Tex.Civ.App., 1955; n. w. h.). It is recited in 37 Tex.Jur.2d 391, 392, § 201, Disabilities:

"One who seeks to avoid the bar of the statute of limitation, which is duly pleaded, on the ground of minority, coverture, or any other exception that will toll limitation or bring him beyond the pale of the operation of the statute, should specifically plead the disability. Disability is said to be similar to a plea of confession and avoidance; if it is not pleaded evidence relative thereto will not be considered, even though it was received without objection. One who sets up disability by way of avoidance should state facts that show that the statute could not have run; he should state when the disability commenced, the extent of its duration, and his plea should be directed to the particular disability sought to be relied on."

We overrule Point of Error No. 5. Point No. 6 has heretofore been discussed and overruled.

■ Point of Error No. 7 complains that the trial court allowed testimony of witnesses over objection that such testimony was in violation of the dead man's statute, Art. 3716, V.A.T.S. We are cited to no instances of such claimed improper testimony, nor were we able to find any by a careful review of the record. This point is overruled.

Having disposed of all appellants' points and finding no error, the judgment of the trial court is in all things affirmed.