**J. A. BURNS, Appellant,**

**v.**

**Eunice Mae BURNS et vir., et al., Appellees.**

**No. 7883.**

Court of Civil Appeals of Texas.

Texarkana.

March 11, 1969.

Rehearing Denied March 25, 1969.

Sidney Lee, Raffaelli, Lee & Hawkins, Texarkana, for appellant.

Harry Friedman, Harkness, Friedman & Kusin, Texarkana, for appellees.

DAVIS, Justice.

A trespass to try title suit. The parties will be referred to as they were in the trial court.

Plaintiffs, (all of the children of J. L. Burns, deceased, and Willie L. Burns,) sued the defendant, J. A. Burns, for title and possession of a 70 acre tract of land situated in the G. W. Tubbs HRS in Bowie County, Texas. Defendant filed a plea of not guilty and alleged by an affirmative defense that he was the sole owner of the tract of land by virtue of an oral contract entered into with Willie L. Burns, surviving widow of J. L. Burns, and the defendant. That defendant would assume all of the community indebtedness that was created by J. L. Burns, during his lifetime, and Willie L. Burns, pay all the delinquent taxes and permit Willie L. Burns and her children to reside on the property until the children became of age, then, Willie L. Burns would convey the land by deed to defendant.

Trial was to a jury which answered the special issues, in part, as follows:

"SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that Willie L. Burns

agreed with the defendant to convey him the whole of the land in controversy herein if he would pay the community indebtednesses and taxes on said property and would then permit her and her children, the plaintiffs in this case, to remain on such property until such time as they had attained their majorities? Answer 'yes' or 'no'.

Answer: Yes

\*      \*      \*      \*      \*      \*

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that in reliance on such agreement, if any, the defendant paid such community indebtednesses and permitted Willie L. Burns and her children, the plaintiffs herein, to remain on said property until such time as they attained their majorities?

Answer 'yes' or 'no'.

Answer: Yes.

\*      \*      \*      \*      \*      \*

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that the defendant, in reliance on such agreement with Willie L. Burns, if any, made valuable and permanent improvements to the land in controversy herein prior to the time the said Willie L. Burns left such property, on or about March 1, 1958?

Answer 'yes' or 'no'.

Answer: Yes

\*      \*      \*      \*      \*      \*

## SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that in reliance on such agreement with Willie L. Burns, if any, the defendant paid taxes on the land in controversy herein prior to the time the said Willie L. Burns deeded the property to the plaintiffs, on March 11, 1959?

Answer 'yes' or 'no'.

Answer: Yes."

### HISTORY

W. T. Collins, et ux, executed a Deed of Trust Lien on the land involved to the Federal Land Bank on September 13, 1923, to secure the payment of a Deed of Trust Note in the amount of $800.00. W. T. Collins, et ux, conveyed the land to J. L. Burns on September 19, 1927, and Burns assumed the payment of the $800.00 Federal Land Bank Note, and executed a Vendor's Lien Note to Collins in the amount of $300.00 Collins assigned the $300.00 note to R. M Hubbard.

J. L. Burns married Willie L. Burns on April 24, 1918. He was arrested in 1933 and was a prisoner until the time of his death on February 15, 1935. He died intestate. No administration was had on his estate. He was survived by Willie L. Burns and seven children, all minors at the time of his death. After the death of J. L. Burns, Willie L. Burns and the children continued to reside on the land.

The defendant is a brother of J. L. Burns. He had been married and was the father of five children. He farmed the land involved in this suit during 1934 and 1935 on a third and fourth basis.

In 1936, the Federal Land Bank Note payments, the Vendor's Lien Note, and the taxes were all delinquent. These were community debts. The Federal Land Bank notified Willie L. Burns that it was going to foreclose its lien. She and the children had to have a place to stay. So, she entered into the oral contract hereinabove set out with the defendant. The record shows that Willie L. Burns asked the defendant to come and live with her, and she would deed him the place.

R. M. Hubbard passed away in 1934. A brother of Mrs. Hubbard, acting as at-

torney-in-fact, went to look the place over with the idea in mind of taking up the first lien note. He concluded there was more owed on the land than it was worth. The defendant, acting under the agreement, paid off the Vendor's Lien Note on October 15, 1936. He also brought the payments up to date with the Federal Land Bank and paid the delinquent taxes.

The old house was in very bad condition. Defendant did quite a bit of repair to the building soon after he moved there to live. He and his wife were separated and he moved into the house with Willie L. Burns in 1937. They started cohabiting together soon thereafter and they had one son, James Lloyd Burns, on April 13, 1940.

In addition to repairing the old house, defendant built a barn and sheds. He also built or repaired the fences, dug two stock ponds and enlarged an old one that was already dug, and cleared about 16 acres of land. About 1955, he tore the old house down and built a new house.

All the children remained on the place until they were married, the youngest getting married in September, 1947. Willie L. Burns continued to live there until 1958. She left and went to California. She executed a Warranty Deed to the plaintiffs on March 11, 1959, for the consideration of "$1.00 cash in hand paid and for the further consideration of the love and affection which I have for my children, * * the receipt and sufficiency of which is hereby acknowledged and confessed and for which no lien either expressed or implied is retained or shall exist." The jury found that the plaintiffs did not purchase the land for a valuable consideration.

Defendant secured a divorce from his wife, Johnnie Campbell Burns, on October 19, 1948. On March 1, 1952, defendant and Willie L. Burns, as husband and wife, executed an oil and gas lease on the land. In April 1952, the plaintiffs executed a quitclaim deed on the land to Willie L. Burns. On May 5, 1952, defendant and Willie L. Burns conveyed a right-of-way deed to the

State of Texas. On June 11, 1952, defendant and Willie L. Burns sold some common barrow dirt to the State of Texas. In 1955, defendant built a new house on the land. In July, 1958, Willie L. Burns left the defendant and went to California. Defendant remained in possession of the land and still had the sole and exclusive possession thereof until the time of the trial of this cause.

The jury also found that defendant had made permanent and valuable improvement on the land during the time that he had possession.

## OPINION

We will not comment on whether or not Willie L. Burns is now the common law wife of the defendant.

By points 1 through 12 defendant says the trial court erred in granting judgment for the appellees because of the provisions of the statutes of frauds, in disregarding the jury's answer to special issues 4, 5, 6, 7 and 8, and in entering judgment for the appellees irregardless of the jury's findings. The evidence is fully sufficient to support the jury's answers to special issues Nos. 4, 5, 6, 7 and 8 and the trial court erred in disregarding the same.

The Federal Land Bank Note and lien, the Vendor's Lien Note and the delinquent taxes were community indebtedness created by J. L. Burns during his lifetime and Willie L. Burns. Willie L. Burns, the surviving wife, although unqualified as administratrix of the estate, had the right to convey the community homestead to satisfy the Community debts. Davis v. Magnolia Pet. Co., Tex.Civ.App., 1937, 105 S.W.2d 695, affirmed Tex.Comm.App.1940, 134 Tex. 201, 134 S.W.2d 1042, opinion adopted by Sup.Ct.; English v. Paschall, Tex.Civ. App. 1950, 229 S.W.2d 645, error ref.; Buckner Orphans Home v. Maben, Tex.Civ. App., 1952, 252 S.W.2d 726 NWH; Turner v. Sawyer, Tex.Civ.App., 1954, 271 S.W.2d 119, err. ref., n. r. e.

The surviving husband, or wife, has the right, as a matter of law to sell the community property of an estate, including the homestead, to pay community debts that were created during the lifetime of the other spouse who has passed away. Stone v. Jackson, 1919, 109 Tex. 385, 210 S.W. 953; Beaumont Cotton Oil Mill Company v. Reeves, Tex.Civ.App., 1918, 203 S.W. 375, err. ref.; Clemmons v. McDowell, Tex. Comm.App., 1929, 12 S.W.2d 955, opinion approved by the Supreme Court; Jones v. Harris, Tex.Civ.App., 1911, 139 S.W. 69, err. ref.; Probate Code, § 160, V.A.T.S.

Since the land involved in this case was conveyed by an oral contract, it seems that the case of Nelson v. Wilson, Tex.Civ.App., 1936, 97 S.W.2d 287, W.R., seems to be directly in point. In that case there was a parol sale or a parol gift of 52.6 acres of land.

The plaintiffs seem to rely very heavily on the statute of frauds, Art. 3995, V.A. T.S. Rule 94 Texas Rules of Civil Procedure provides that the statute of frauds must be affirmatively plead. Plaintiffs did not plead the statute of frauds in reply to defendants affirmative pleading. Masten v. Masten, Tex.Civ.App., 1942, 165 S.W.2d 225, wr. ref.

In order to constitute the sale of the land the defendant actually went into possession of the same in 1937. At that time he had already paid a part of the community indebtedness and thereafter paid the balance. In addition to that, he made valuable and permanent improvements upon the land. For this reason, we think defendant is entitled to a judgment in this case. Hidalgo v. Lechuga, Tex.Civ.App. 1966, 407 S.W.2d 545, writ ref., n. r. e. The points of error are sustained.

We have carefully examined the other points of error, and in view of our holding, we think that each of them are without any merit. They are overruled.

The judgment of trial court is reversed and rendered.